Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Richard J. (Rex) Burch*
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

Michael A. Josephson*
Texas State Bar No. 24014780
Andrew W. Dunlap*
Texas State Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

* To apply for admission *pro hac vice*.

*Attorneys for Ellings and the Hourly Employees*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CORY ELLINGS, Individually and On Behalf of Others Similarly Situated,<br><br>       Plaintiff,<br><br>vs.<br><br>KINROSS GOLD U.S.A., INC.,<br><br>       Defendant. | Case No. _____<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);<br><br>(2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016).<br><br>(3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>(4) Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018); and |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUMMARY**

1.    Cory Ellings (Ellings) brings this class and collective action to recover unpaid wages and other damages from Kinross Gold U.S.A., Inc. (Kinross) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2.    Kinross employs Ellings as one of its Hourly Employees (defined below).

3.    Kinross pays Ellings and the other Hourly Employees by the hour.

4.    Ellings and the other Hourly Employees regularly work more than 40 hours a workweek.

5.    However, Kinross does not pay Ellings and the other Hourly Employees for all their hours worked, including overtime hours.

6.    Rather, Kinross requires Ellings and the other Hourly Employees to gather tools and equipment necessary to perform their job duties and suit out in protective clothing and safety gear necessary to safely perform their job duties "off the clock" prior the start of their shifts.

7.    Likewise, Kinross requires Ellings and the other Hourly Employees to wash-up, change out of their safety gear and protective clothing, and store their tools and equipment "off the clock" following the end of their shifts.

8.    But Kinross does not pay Ellings and the other Hourly Employees for this time before and after their shifts (¶¶ 6 and 7 collectively Kinross's "pre/post shift off the clock policy").

9.    Kinross likewise does not authorize or permit Ellings and the other Hourly Employees to take meal or rest periods, in violation of NRS § 608.019.

10.    Rather, Kinross requires them to perform their job duties throughout their shifts.

11.    Kinross's pre/post shift off the clock policy violates the FLSA and Nevada law by depriving Ellings and the other Hourly Employees of wages, including overtime wages, for all hours worked.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

12.     Likewise, Kinross's pre/post shift off the clock policy violates Nevada Law by depriving Ellings and the other Hourly Employees of timely payment of earned wages for all hours worked upon termination of their employment.

13.     In addition to failing to pay Ellings and the other Hourly Employees for all their hours worked, Kinross also fails to pay them overtime at the required premium rate.

14.     Instead, Kinross pays them non-discretionary bonuses calculated based on factors established by Kinross, including production, environmental considerations, and safety, in combination with the number of hours worked by each Hourly Employee.

15.     Kinross likewise pays Ellings and the other Hourly Employees a non-discretionary "Geo Allowance."

16.     Kinross knows these bonuses and Geo Allowance must be, but are not, included in the Hourly Employees' regular rates of pay for overtime purposes (Kinross's "bonus pay scheme").

17.     Kinross's bonus pay scheme violates the FLSA and Nevada law by depriving Ellings and the other Hourly Employees of overtime at rates not less than 1.5 times their regular rates of pay —based on all remuneration—for hours worked in excess of 40 a workweek.

18.     Likewise, Kinross's bonus pay scheme violates Nevada law by depriving Ellings and the other Hourly Employees of timely payment of earned wages for all hours worked, including overtime hours, upon termination of their employment.

JURISDICTION & VENUE

19.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

20.     This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

21.     This Court has general personal jurisdiction over Kinross because Kinross is a Nevada corporation.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

es

22.     Venue is proper because Kinross is a Nevada corporation and Ellings worked in Kinross's Round Mountain Mine in Nye County, Nevada, which is in the informal Southern District of the District of Nevada. *See* 28 U.S.C. § 1391(b).

## PARTIES

23.     Kinross has employed Ellings in its Round Mountain Mine in Nye County, Nevada since approximately October 2019.

24.     Kinross classifies Ellings as non-exempt and pays him by the hour.

25.     Kinross subjects Ellings to its pre/post shift off the clock policy and bonus pay scheme.

26.     Ellings' written consent is attached as **Exhibit 1**.

27.     Ellings bring this class and collective action on behalf of themselves and other similarly situated Kinross employees who were also subject to Kinross's pre/post shift off the clock policy and/or bonus pay scheme.

28.     The FLSA collective of similarly situated employees is defined as:

> **All hourly Kinross employees during the past 3 years through final resolution of this action ("FLSA Collective Members").**

29.     Ellings also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

30.     The Nevada Class of similarly situated employees is defined as:

> **All hourly Kinross employees in Nevada during the past 3 years through final resolution of this action ("Nevada Class Members").**

31.     The FLSA Collective Members and Nevada Class Members are collectively referred to as the "Hourly Employees."

32.     Kinross is a Nevada corporation.

33.     Kinross may be served with process by serving its registered agent: **United Agent Group Inc., 8275 S Eastern Ave, Ste 200, Las Vegas, Nevada 89123**.

- 4 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

**FLSA COVERAGE**

34.     At all relevant times, Kinross has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

35.     At all relevant times, Kinross has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

36.     At all relevant times, Kinross has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as personal protective equipment, tools, drills, computers, tablets, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1)

37.     At all relevant times, Kinross has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

38.     At all relevant times, Ellings and the other Hourly Employees have been Kinross's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

39.     At all relevant times, Ellings and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

**FACTS**

40.     Kinross bills itself as "a senior gold mining company with a diverse portfolio of mines and projects in the United States, Canada, Brazil, Chile, and Mauritania," and "actively monitor[s] developments in best practices and applicable laws to ensure that the Company meets [its] commitment . . . to the highest standards of corporate governance and ethical conduct."[1]

41.     Kinross owns, controls, operates four mines in the United States, two in Nevada and two in Alaska.[2]

42.     To meet its business objectives, Kinross hires workers, like Ellings and the other Hourly Employees.

---

[1] https://www.kinross.com/about/default.aspx (last visited November 18, 2024).
[2] https://www.kinross.com/operations/default.aspx (last visited November 18, 2024).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

43.     While exact job titles and precise job duties may differ, Ellings and the other Hourly Employees are all subject to Kinross's same or similar illegal policies—its pre/post shift off the clock policy and bonus pay scheme—while performing the same or similar work.

44.     For example, Ellings has worked for Kinross as a member of the cable crew and as a rubber tire loader operator in Kinross's Round Mountain Mine in Round Mountain, Nevada since approximately October 2019.

45.     As a member of the cable crew, Ellings' job duties included moving and positioning electrical cables, and as a rubber tire loader operator, Ellings' job duties include moving dirt, waste, and ore and supporting and finalizing dirt work conducted by dozers and electric rope shovels.

46.     Ellings' job duties likewise include donning and doffing safety gear and protective clothing, gathering and storing tools and equipment, and washing up on Kinross's premises, "off the clock," before and after his scheduled shifts.

47.     Kinross pays Ellings by the hour.

48.     Kinross pays Ellings approximately $38.94 an hour.

49.     Throughout his employment, Ellings has worked 7 days on and 7 days off for approximately 12 to 13 hours a day "on the clock" (91 hours a week).

50.     Likewise, the other Hourly Employees generally work approximately 7 days on and 7 days off for approximately 12 to 13 hours a day "on the clock" (91 hours a week).

51.     Kinross requires Ellings and the other Hourly Employees to track their "on the clock" hours worked using Kinross's designated timekeeping system.

52.     But throughout their employment, Kinross has not paid Ellings and the other Hourly Employees for all their hours worked.

53.     Instead, Kinross subjects Ellings and the other Hourly Employees to its pre/post shift off the clock pay scheme.

54.     For example, Kinross requires Ellings to dress out in his protective clothing and safety gear (including hard hat, reflective clothing, ear protection, steel toed boots, safety glasses, cable "hot"

- 6 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

gloves, along with inspecting the gloves), gather tools and equipment (including impact wrench, crescent wrench, channel locks, etc.) fundamentally necessary to performing his job, prior to his shifts, "off the clock," and without compensation.

55.    This takes Ellings approximately 10 to 30 minutes each workday.

56.    Ellings could not perform his job duties in accordance with Kinross's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

57.    Ellings could not safely perform his job duties in accordance with Kinross's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

58.    Indeed, much of the safety gear Ellings must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

59.    The donning of protective clothing and safety gear and gathering of tools and equipment are integral and indispensable work duties for Ellings.

60.    Likewise, Kinross requires Ellings to remove his safety gear and protective clothing, wash and inspect his safety gear, store his tools and equipment, and wash up after "clocking out" for his shifts, "off the clock" and without compensation.

61.    This takes Ellings approximately 10 to 30 minutes each workday.

62.    Ellings could not perform his job duties in accordance with Kinross's policies, procedures, and expectations without removing his safety gear and protective clothing, washing and inspecting his safety gear, storing his tools and equipment, and washing up.

63.    Ellings could not safely perform his job duties in accordance with Kinross's policies, procedures, and expectations without removing his safety gear and protective clothing, washing and inspecting his safety gear, storing his tools and equipment, and washing up each day.

64.    The removal, washing, and inspecting of his safety gear and protective clothing, storing his tools and equipment, and washing up, are therefore integral and indispensable work duties for Ellings.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

65.    But under its pre/post shift off the clock policy, Kinross does not compensate Ellings for the same.

66.    Thus, because of its pre/post shift off the clock policy, Kinross fails to pay Ellings wages for all hours worked, including overtime wages for all his overtime hours worked, in violation of the FLSA and Nevada Law.

67.    And Kinross did not authorize or permit Ellings to take meal or rest periods. *See* Nev. Rev. Stat. § 608.019 and Nev. Admin. Code § 608.145.

68.    Rather, Kinross requires Ellings to perform his regular job duties throughout his shifts.

69.    Ellings and the other Hourly Employees perform their jobs under Kinross's supervision and use materials, equipment, and technology Kinross approves and supplies.

70.    Kinross requires Ellings and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

71.    At the end of each pay period, Ellings and the other Hourly Employees receive wages from Kinross that are determined by common systems and methods that Kinross selects and controls.

72.    But, just as with Ellings, Kinross fails to pay the other Hourly Employees for all their hours worked.

73.    Indeed, Kinross subjects the other Hourly Employees to its pre/post shift off the clock policy it imposed on Ellings.

74.    Specifically, like Ellings, Kinross requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, reflective clothing, ear protection, steel toed boots, safety glasses, cable "hot" gloves, along with inspecting the gloves), gather tools and equipment (including impact wrench, crescent wrench, channel locks, etc.) fundamentally necessary to performing their jobs, prior to their scheduled shifts, "off the clock," and without compensation.

75.    As with Ellings, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

76. And Kinross requires the other Hourly Employees to remove their safety gear and protective clothing, wash and inspect their safety gear, store their tools and equipment, and wash up after "clocking out" for their shifts, "off the clock" and without compensation.

77. But, like Ellings, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their scheduled shifts.

78. And, just as with Ellings, Kinross does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock" before and after their scheduled shifts.

79. And like Ellings, these job duties take the other Hourly Employees approximately 20 minutes to an hour each workday.

80. Kinross fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Kinross does not want performed.

81. And Kinross knows, should know, or recklessly disregards whether Ellings and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

82. Thus, Kinross requires, requests, suffers, permits, or allows Ellings and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

83. Despite accepting the benefits, Kinross does not pay Ellings and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

84. Thus, under Kinross's pre/post shift off the clock policy, Ellings and the other Hourly Employees are denied wages, including overtime wages, for compensable work they perform "off the clock" before and after their scheduled shifts, in violation of the FLSA and Nevada law.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

85.     And, just as with Ellings, Kinross does not authorize or permit the other Hourly Employees to take meal or rest periods. *See* Nev. Rev. Stat. § 608.019 and Nev. Admin. Code § 608.145.

86.     Rather, like Ellings, Kinross requires the other Hourly Employees to perform their regular job duties throughout their shifts.

87.     Further, throughout their employment, Kinross paid Ellings and the other Hourly Employees according to its bonus pay scheme.

88.     Specifically, Kinross paid Ellings and the other Hourly Employees non-discretionary bonuses calculated based on several factors including safety, productivity and environmental factors that Kinross selected, in combination with the number of hours worked by each Hourly Employee.

89.     For example, during the October 7 to October 20, 2024 pay period, Kinross paid Ellings a $996.12 "Bns Qtr Prod":

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Bns Qtr Prod | | | 996.12 | 5,182.67 |
| Regular | | | | 29,628.02 |
| Overtime | | | | 5,031.40 |
| Clothing | | | | 284.29 |
| Geo Allowance | | | | 3,787.98 |
| Hol Hrs Wk | | | | 3,581.84 |
| Holiday | | | | 2,460.16 |

90.     But Kinross failed to calculate this bonus into Elling's regular rate of pay for the purpose of calculating overtime:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Geo Allowance | | | 180.18 | 3,787.98 |
| Rm Night | 38.9400 | 74.27 | 2,892.07 | 26,681.30 |
| Rm Unsch Nt | 38.9400 | 3.30 | 128.50 | 1,068.91 |
| Rm Unsch Ntot | 58.4100 | .25 | 14.60 | 279.78 |
| Rmnight Ot | 58.4100 | 9.73 | 568.33 | 5,537.86 |
| Regular | | | | 29,628.02 |
| Overtime | | | | 5,031.40 |
| Bns Qtr Prod | | | | 4,186.55 |

91.     Likewise, Kinross paid Ellings and the other Hourly Employees a "Geo Allowance."

92.     For example, during the November 4 to November 17 pay period, Kinross paid Ellings for 86.61 hours and paid Ellings a $177.42 Geo Allowance:

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Geo Allowance | | | 177.42 | 4,119.66 |
| Rm Night | 38.9400 | 75.55 | 2,941.92 | 29,623.22 |
| Rm Unsch Nt | 38.9400 | 2.03 | 79.05 | 1,147.96 |
| Rm Unsch Ntot | 58.4100 | .58 | 33.88 | 313.66 |
| Rmnight Ot | 58.4100 | 8.45 | 493.56 | 6,031.42 |
| Regular | | | | 32,010.53 |
| Overtime | | | | 5,609.15 |
| Bns Qtr Prod | | | | 5,182.67 |

93.    Kinross knew these non-discretionary bonuses and Geo Allowance should have been, but were not, included in Ellings' and the other Hourly Employees' regular rates of pay for overtime purposes.

94.    As a result, Kinross failed to pay Ellings and the other Hourly Employees overtime at a rate not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked over 40 a workweek, in violation of the FLSA and Nevada law.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

95.    Ellings brings his claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to Fed. R. Civ. P. 23.

96.    Like Ellings, the other Hourly Employees are victimized by Kinross's pre/post shift off the clock policy and/or bonus pay scheme.

97.    Other Hourly Employees worked with Ellings and indicated they were paid in the same manner, performed similar work, and were subject to Kinross's same pre/post shift off the clock policy and/or bonus pay scheme.

98.    Based on his experiences with Kinross, Ellings is aware Kinross's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

99.    The Hourly Employees are similarly situated in the most relevant respects.

100.    Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

101.    Rather, the Hourly Employees are held together by Kinross's pre/post shift off the clock policy and bonus pay scheme, which systematically deprive Ellings and the other Hourly

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

Employees of required wages, including required overtime wages, for all hours worked, including hours in excess of 40 hours in a workweek.

102.    Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

103.    Kinross's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

104.    The Hourly Employees are denied overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

105.    Kinross's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

106.    The back wages owed to Ellings and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

107.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Kinross's records, and there is no detraction from the common nucleus of liability facts.

108.    Therefore, the issue of damages does not preclude class or collective treatment.

109.    Ellings' experiences are therefore typical of the experiences of the other Hourly Employees.

110.    Ellings has no interest contrary to or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

111.    Like each Hourly Employee, Ellings has an interest in obtaining the unpaid wages owed under federal and Nevada law.

112.    Ellings and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

- 12 -

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

113.    Ellings retained counsel with significant experience in complex class and collective action litigation.

114.    A class and collective action is superior to other available means for fair and efficient adjudication of this action.

115.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Kinross will reap the unjust benefits of violating the FLSA and Nevada law.

116.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

117.    Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Kinross.

118.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

119.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

120.    Among the common questions of law and fact are:

a.    Whether Kinross's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked;

b.    Whether Kinross's pre/post shift off the clock policy deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

c.    Whether Kinross's pre/post shift off the clock policy deprived the Hourly Employees of earned wages upon termination of employment;

d.    Whether Kinross's bonus pay scheme deprived the Hourly Employees of overtime at the required rate, based on all remuneration, when they worked more than 40 hours in a workweek;

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

e.      Whether Kinross's bonus pay scheme deprived the Hourly Employees of earned wages, including overtime wages, upon termination of employment;

f.      Whether Kinross's decision not to pay the Hourly Employees all "straight time" and overtime wages due was made in good faith; and

g.      Whether Kinross's violations were willful?

121.    Ellings knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

122.    Kinross's pre/post shift off the clock policy and bonus pay scheme deprived Ellings and the other Hourly Employees of wages, including overtime wages, they are owed under federal and Nevada law.

123.    There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

124.    The Hourly Employees are known to Kinross and can be readily identified and located through Kinross's business and personnel records.

**KINROSS'S VIOLATIONS WERE WILLFUL**

125.    Kinross knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

126.    Kinross knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

127.    Kinross knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

128.    Kinross knew it paid its Hourly Employees according to its pre/post shift off the clock policy and/or bonus pay scheme.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

129.    Kinross knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

130.    Kinross knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather and store tools and equipment, and wash-up "off the clock."

131.    Kinross knew it controlled the Hourly Employees' work procedures.

132.    Kinross knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

133.    Kinross knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

134.    Kinross knew its Hourly Employees routinely performed this daily, required "off the clock" work for Kinross's benefit.

135.    In other words, Kinross knew its Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering and storing tools and equipment, inspecting and washing equipment, washing-up) "off the clock" and without compensation.

136.    Kinross knew its pre/post shift off the clock policy and bonus pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours.

137.    Kinross knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

138.    Kinross knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy and bonus pay scheme that systematically deprived the Hourly Employees of "straight time" wages, earned wages, and overtime for their hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

139.    Ellings bring his FLSA claim as a collective action on behalf of themselves and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

140.    Kinross violated, and is violating, the FLSA by employing non-exempt employees (Ellings and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

141.    Kinross's unlawful conduct harmed Ellings and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

142.    Accordingly, Kinross owes Ellings and the other FLSA Collective Members the difference between the rate actually paid and the required overtime rate based on all remuneration.

143.    Because Kinross knew, or showed reckless disregard for whether, its pre/post shift off the clock policy and/or bonus pay scheme violated the FLSA, Kinross owes Ellings and the other FLSA Collective Members these wages for at least the past 3 years.

144.    Kinross is also liable to Ellings and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

145.    Finally, Ellings and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY FOR ALL HOURS WORKED
#### (NEVADA CLASS MEMBERS)

146.    Ellings brings his claim for failure to pay for all hours worked as a class action on behalf of himself and the other Nevada Class Members under Nevada law pursuant to Fed. R. Civ P 23.

147.    Ellings has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

148.    At all relevant times, Kinross was subject to Nevada law because Kinross was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

149.    At all relevant times, Kinross employed Ellings and each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

150.    NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

151.    Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

152.    Kinross failed to compensate Ellings and the other Nevada Class Members for all hours worked, as described in this Complaint.

153.    Accordingly, Ellings "bring[s] a civil action to recover the difference between the amount paid to [Ellings and the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

154.    As noted, Kinross did not compensate Ellings and the other Nevada Class Members for integral and indispensable work before and after their shifts, performed under Kinross's direction and control and on Kinross's premises.

155.    Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

156.    Ellings and the other Nevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Kinross's company-wide policies and practices.

157.    As a direct and proximate result, Ellings and the other Nevada Class Members have suffered, and continue to suffer, substantial damages.

158.    Kinross regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Ellings and the Nevada Class Members.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

159.    Through this unlawful course of conduct, Kinross has deprived and continues to deprive Ellings and the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

160.    Kinross's actions were (and are) willfully oppressive, fraudulent and malicious, entitling Ellings and the Nevada Class Members to punitive damages.

161.    Kinross's violations were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to the claims.

162.    In accordance with N.R.S. 608.140, demand has been made to Kinross for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

163.    Accordingly, Ellings and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* Nev. Rev. Stat. § 608.005 *et seq.*

## COUNT III
### FAILURE TO PAY MINIMUM WAGES
### (NEVADA CLASS MEMBERS)

164.    Ellings brings his failure to pay minimum wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to Fed. R. Civ P 23.

165.    Ellings has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

166.    At all relevant times, Kinross was subject to Nevada law because Kinross was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

167.    At all relevant times, Kinross employed Ellings and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

168.    Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

- 18 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs.

169.    Accordingly, Ellings and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

## COUNT IV
### FAILURE TO PAY OVERTIME WAGES
### (NEVADA CLASS MEMBERS)

170.    Ellings brings his failure to pay overtime claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to Fed. R. Civ P 23.

171.    Ellings has a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

172.    At all relevant times, Kinross was subject to Nevada law because Kinross was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

173.    At all relevant times, Kinross employed Ellings and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

174.    Nevada law requires that employers, such as Kinross, pay employees, such as Ellings and the Nevada Class Members at least 1.5 times their regular rate of pay for all hours worked in excess of 40 a workweek. Nev. Rev. Stat. § 608.018(2).

175.    Ellings and the Nevada Class Members have been deprived of their overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek as a direct and proximate result of Kinross's pre/post shift off the clock policy and bonus pay scheme.

176.    Kinross regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Ellings and the Nevada Class Members.

177.    Through this unlawful course of conduct, Kinross has deprived and continues to deprive Ellings and the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

178.    Kinross's actions were willfully oppressive, fraudulent and malicious, entitling Ellings and the Nevada Class Members to punitive damages.

179.    Kinross's violations were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

180.    In accordance with N.R.S. 608.140, demand has been made to Kinross for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

181.    Accordingly, Ellings and the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* N.R.S. § 608.005 *et seq.*

### JURY DEMAND

182.    Ellings demands a trial by jury on all Counts.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

### RELIEF SOUGHT

WHEREFORE, Ellings, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.   An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.   An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.   An Order appointing Ellings and his counsel to represent the interests of the Hourly Employees;

d.   An Order finding Kinross liable to Ellings and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest;

e.   An Order finding Kinross liable to Ellings and the Hourly Employees for their unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f.   A Judgment against Kinross awarding Ellings and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

g.   An Order awarding attorney's fees, costs, and expenses;

h.   Pre- and post-judgment interest at the highest applicable rates; and

i.   Such other and further relief as may be necessary and appropriate.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

1    Dated: January 15, 2025.                          Respectfully submitted,

2                                                       **RODRIGUEZ LAW OFFICES, P.C.**

3                                                       By: */s/  Esther Rodriguez*
4                                                       Esther C. Rodriguez
                                                        Nevada State Bar No. 006473
5                                                       10161 Park Run Drive, Suite 150
                                                        Las Vegas, Nevada 89145
6                                                       Tel: (702) 320-8400; Fax: (702) 320-8401
                                                        info@rodriguezlaw.com
7
                                                        Michael A. Josephson*
8                                                       Andrew W. Dunlap*
                                                        **JOSEPHSON DUNLAP LLP**
9                                                       11 Greenway Plaza, Suite 3050
10                                                      Houston, Texas 77046
                                                        713-352-1100 – Telephone
11                                                      713-352-3300 – Facsimile
                                                        mjosephson@mybackwages.com
12                                                      adunlap@mybackwages.com

13                                                      Richard J. (Rex) Burch*
14                                                      **BRUCKNER BURCH PLLC**
                                                        11 Greenway Plaza, Suite 3025
15                                                      Houston, Texas 77046
                                                        713-877-8788 – Telephone
16                                                      rburch@brucknerburch.com

17                                                      *Pro hac vice applications forthcoming*

18                                                      **ATTORNEYS FOR ELLINGS &**
19                                                      **THE HOURLY EMPLOYEES**

20

21

22

23

24

25

26

27

28

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Ellings v. Kinross Gold U.S.A., Inc.*

# EXHIBIT 1

<u>CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT</u>

Print Name: <u>Cory Ellings</u>

1.  I hereby consent to make a claim against <u>Kinross Gold</u> to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against <u>Kinross Gold</u>.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: <u>Cory Ellings (Nov 5, 2024 10:08 PST)</u>          Date Signed: <u>Nov 5, 2024</u>